**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| WILLIAM J. NOLAN, | : | CIVIL NO. **3:05-CV-0208** |
| | : | |
| Petitioner | : | (Judge Nealon) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| WARDEN JAMES WYNDER, | : | |
| ATTORNEY GENERAL OF THE | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| and DISTRICT ATTORNEY OF | : | |
| LUZERNE COUNTY, | : | |
| | : | |
| Respondents | : | |


## <u>REPORT AND RECOMMENDATION</u>


Over a seven-month period and in two separate counties the petitioner and his accomplices stole more than 25 vehicles. *Commonwealth v. Nolan,* 855 A.2d 834, 835 (Pa. 2004).  In March of 1991, the petitioner was arrested in Lackawanna County and charged with multiple counts of theft by deception, receiving stolen property, criminal conspiracy, and dealing in vehicles with removed or falsified numbers. *Id.*  In November of 1991, while incarcerated and awaiting disposition of the charges

against him in Lackawanna County, the petitioner was charged
with crimes in Luzerne County. *Id.*

    The petitioner subsequently pled guilty in Lackawanna
County to nine counts of receiving stolen property and one
count of theft. *Id.*  He was sentenced to an aggregate term of
30 to 60 years imprisonment. *Id.* at 837.

    On the first day of his trial in Luzerne County, the
petitioner moved to have all the charges against him dismissed.
*Id.*  He argued that the Luzerne prosecution contravened double
jeopardy tenets of the United States and Pennsylvania
constitutions as well as 18 Pa.C.S. § 110, which sets forth
Pennsylvania's compulsory joinder rule. *Id.*  "The trial court
granted the motion in part, dismissing all charges it found
overlapped with the Lackawanna County prosecution." *Id.*  The
jury in his Luzerne County prosecution convicted the petitioner
of six counts of theft by unlawful taking and five counts of
receiving stolen property. *Id.*  He was sentenced to an
aggregate term of 21 to 42 years imprisonment, to be served
consecutive to his Lackawanna County sentence. *Id.*

2

The petitioner appealed his Luzerne County conviction to the Superior Court of Pennsylvania. *Id.* at 838.  The Superior Court remanded the case for resentencing. *Id.*  On remand, the petitioner was again sentenced to 21 to 42 years imprisonment. *Id.*  The petitioner appealed again to the Superior Court and this time the Superior Court affirmed the petitioner's sentence. *Id.*  The Pennsylvania Supreme Court initially granted review, but on September 18, 1997, the Pennsylvania Supreme Court dismissed the appeal as having been improvidently granted. *Commonwealth v. Nolan,* 699 A.2d 731 (Pa. 1997).

The petitioner filed a Post Conviction Relief Act (PCRA) petition which was denied. *Commonwealth v. Nolan,* No. 604 MDA 2000, slip op. at 2 (Pa.Super.Ct. Sept. 7, 2001).  The petitioner appealed and one of the claims the petitioner raised on appeal was that his counsel had been ineffective for failing to raise on direct appeal the argument that the Luzerne County prosecution was barred under the compulsory joinder provisions of 18 Pa.C.S.A. § 110. *Id.* at 3.  The Superior Court concluded that the prosecution in Lackawanna County and the prosecution in Luzerne County emanated from the same criminal episode and, therefore, the Luzerne County prosecution was barred by 18

3

Pa.C.S.A. §110. *Id.* at 13.  The Superior Court further

concluded that there was no reasonable basis for counsel's

failure to raise the issue on direct appeal and that the

petitioner was prejudiced by counsel's error. *Id.* at 14.  The

Superior Court indicated that in light of its decision on the

petitioner's ineffective assistance of counsel claim it need

not reach the petitioner's remaining claims. *Id.*  By an Order

dated September 7, 2001, the Superior Court reversed the order

denying the PCRA petition and remanded the case to the PCRA

court with instructions to vacate the petitioner's sentence and

dismiss the charges against him. *Id.*


     The Commonwealth appealed the Superior Court's order to

the Pennsylvania Supreme Court. *Commonwealth v. Nolan,* 855 A.2d

834, 838 (Pa. 2004).  The Pennsylvania Supreme Court concluded

that the petitioner's conduct and "multifaceted illegal

operation" did not constitute a single criminal episode and,

consequently "counsel was not ineffective for failing to raise

§ 110 on direct appeal because the claim would have been

unfounded." *Id.* at 841.  The Pennsylvania Supreme Court

reversed the order of the Pennsylvania Superior Court, but the

Court took no action to remand the case to the Superior Court

4

for consideration of the other claims that the petitioner had

raised in his PCRA petition and appeal. *Id.*  The petitioner

filed a motion for reargument which the Pennsylvania Supreme

Court denied by an Order dated January 18, 2005.


On January 31, 2005, the petitioner, proceeding *pro se*,

filed in this court a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  The petitioner is challenging

his conviction in the Court of Common Pleas of Luzerne County.

We construe the petition as raising the following claims: 1)

that the petitioner's counsel was ineffective by failing to

raise on direct appeal the argument that the Luzerne County

prosecution was barred by 18 Pa.C.S.A. § 110 and by double

jeopardy principles; 2) that the petitioner's conviction in

Luzerne County violated double jeopardy; and 3) that the

Pennsylvania Supreme Court denied the petitioner due process by

failing to remand his case to the Superior Court for

consideration of his outstanding claims.[1]

_____

[1] We note that the petitioner actually lists four claims in his
petition. *Doc. 1 at 8.* The fourth claim is that the Pennsylvania
Supreme Court's decision reversing the Superior Court was contrary
to case law and was based on an unreasonable determination of the
facts in light of the evidence presented in the state court
proceeding. *Id.*  Given that both the Superior Court and the
Pennsylvania Supreme Court addressed only the claim that

By an Order dated February 7, 2005, we gave the petitioner the notice required by *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), and ordered the petitioner to inform the court on or before February 28, 2005 whether he wants (1) to have his petition ruled upon as filed; (2) if his pleading is not styled as a § 2254 petition, to have his pleading recharacterized as a § 2254 petition and heard as such, but lose his ability to file a second or successive petition absent certification by the court of appeals as required by 28 U.S.C. § 2244(b); or (3) to withdraw his petition and file one all-inclusive petition within the one-year statutory period prescribed by 28 U.S.C. § 2244(d).

The petitioner did not respond to the Order of February 7, 2005.  Therefore, we construed the petition as a 28 U.S.C. § 2254 petition, as it is captioned.  By an Order dated March 9, 2005, the respondents were ordered to respond to the petition on or before March 30, 2005.  On March 30, 2005, the

petitioner's counsel was ineffective for failing to argue on direct appeal that the prosecution was barred by 18 Pa.C.S.A. §110, the petitioner's fourth claim seems to be merely another way of stating his claim that his counsel was ineffective for failing to raise 18 Pa.C.S.A. § 110 on direct appeal.

respondents requested an enlargement of time to respond to the petition.  By an Order dated April 4, 2005, the respondents were granted an extension of time until April 29, 2005 to file their response to the petition.

The respondents did not file a response to the petition by April 29, 2005.  By an Order dated May 11, 2005, the respondents were ordered to show cause why a default judgment should not be entered in favor of the petitioner.  On May 25, 2005, the respondents filed a response to the show cause order. The respondents stated that their failure to file a response to the petition was due to counsel's error in not placing the due date for the response on his calendar.

On June 16, 2005, the respondents filed a response to the petition.  The respondents argued that the petitioner failed to exhaust state remedies with regard to his double jeopardy claim and his claim that the Pennsylvania Supreme Court violated his due process rights by failing to remand his remaining unresolved claims to the Pennsylvania Superior Court.  The respondents also argued that the petitioner's claim that his prosecution violated 18 Pa.C.S.A. § 110 is not cognizable under

federal habeas law and that he procedurally defaulted that claim.[2]  The respondents also argued that the petitioner's prosecution did not violate the double jeopardy clause.

On June 6, 2005, the petitioner filed a response to the respondents' response to the order to show cause why a default judgment should not be granted.  In this document, the petitioner requested that a default judgment be entered in his favor.

On June 14, 2005, the respondents filed a supplement to their response to the petition.  The respondents attached to that document an order from the Pennsylvania Supreme Court dated June 9, 2005 granting an application for relief and directing the Superior Court to consider the issues raised by the petitioner in his appeal that were not addressed in its September 7, 2001 order.  The respondents argued that the recent order from the Pennsylvania Supreme Court renders moot

---

[2] We do not construe the petition as raising a direct claim that the prosecution violated 18 Pa.C.S.A. § 110.  Rather, the petitioner claims that his counsel was ineffective by failing to raise on direct appeal the argument that the Luzerne County prosecution was barred by § 110.

the petitioner's claim that the court denied him due process by
failing to remand his case to the Superior Court for
consideration of his outstanding claims.  The respondents
requested that the court dismiss that claim.  Further, the
respondents requested that court hold any decision on the
petition in abeyance until such time as the Pennsylvania
Superior Court rules on the claims that were remanded to it.

On June 22, 2005, the petitioner filed a reply to the
respondents' original response to the petition.

Given the June 9, 2005 Order from the Pennsylvania Supreme
Court, we thought it prudent to allow the petitioner additional
time to consider whether he wants to proceed with the instant
habeas petition.  By an Order dated June 30, 2005, the
petitioner was permitted an extension of time to July 18, 2005
to elect whether to withdraw his petition.

On July 1, 2005, the petitioner filed a reply to the
respondents' supplemental response.  In this document, the
petitioner again requested that a default judgment be entered
in his favor.  In the alternative, the petitioner requested

9

that he be permitted to amend his petition in this case to add
the claims which have been remanded by the Pennsylvania Supreme
Court to the Pennsylvania Superior Court.

On July 13, 2005, the petitioner filed a response to the
Order of June 30, 2005 and a request for clarification of that
order.  The petitioner indicated that he is concerned that if
he withdraws the current petition and files a second petition
after the Pennsylvania courts consider the claims currently
before the Superior Court that second petition will be barred
by the statute of limitations.  He questioned whether the Order
of June 30, 2005 extends the statute of limitations for filing
a habeas petition following the resolution by the Pennsylvania
courts of the claims that are currently pending before the
Superior Court.  The petitioner also indicated that he is
concerned that withdrawing his petition will excuse the default
of the respondents in failing to timely file a response to his
petition.  Also, the petitioner again requested that he be
allowed to amend his petition to include the claims currently
before the Pennsylvania Superior Court and that the court hold
the instant petition in abeyance until after those claims are
decided by the Pennsylvania courts.  He further requested an

10

extension of the time, until after the court clarifies its June 30, 2005 order, to elect whether or not to withdraw his petition.

By an Order dated July 18, 2005, we granted the petitioner's motion for clarification to the extent that we clarified that the Order of June 30, 2005 does not extend or toll the statute of limitation on any subsequent habeas petition filed by the petitioner.  We further denied the petitioner's request for a default judgment.  We also directed the respondents to respond to the petitioner's request for leave to amend his petition in this case to include the claims currently before the Pennsylvania Superior Court.  Finally, we extended the time until August 8, 2005 for the petitioner to elect whether or not to withdraw the instant petition.

The petitioner has not elected to withdraw the instant petition.  On July 29, 2005, the respondents filed a response to the petitioner's request to amend his petition in this case to include the claims currently before the Pennsylvania Superior Court.  The respondents state that they concur in the petitioner's request to hold the petition in abeyance until the

Superior Court has completed its review of the petitioner's

case but that it does not concur in the petitioner's request to

amend his petition to include the claims currently before the

Pennsylvania Superior Court.  The respondents assert that the

claims currently before the Pennsylvania Superior Court do not

implicate federal or constitutional rights, and, that

therefore, those claims are not subject to federal habeas

corpus review.[3]

     As stated before, we construe the petition in this case as

raising the following claims: 1) that the petitioner's counsel

was ineffective in failing to raise on direct appeal the

argument that the Luzerne County prosecution was barred by 18

Pa.C.S.A. § 110 and by double jeopardy principles; 2) that the

petitioner's conviction in Luzerne County violated double

jeopardy; and 3) that the Pennsylvania Supreme Court denied the

---

     [3] Neither the petitioner nor the respondents have provided the
court with a copy of the petitioner's appeal and brief to the
Pennsylvania Superior Court.  Thus, we can not definitively
determine the nature of the claims before the Superior Court.  We
note, however, that the petitioner has set forth in his petition the
claims that he contends that he presented to the Superior Court.
Almost all of those claims are framed, at least in part, as
ineffective assistance of counsel claims.

petitioner due process by failing to remand his case to the
Superior Court for consideration of his outstanding claims.

     Given the Pennsylvania's Supreme Court's Order of June 9,
2005, the petitioner's claim that the Pennsylvania Supreme
Court denied him due process by failing to remand his case to
the Superior Court for consideration of his outstanding claims
is moot.  Of the petitioner's other claims, from the documents
provided to the court it appears that the only claim that the
petitioner exhausted in the state courts is his claim that his
counsel was ineffective by failing to raise on direct appeal
the argument that the Luzerne County prosecution was barred by
18 Pa.C.S.A. § 110.  The petitioner's other two claims - that
the petitioner's counsel was ineffective by failing to raise on
direct appeal the argument that the Luzerne County prosecution
was barred by double jeopardy principles and that the
petitioner's conviction in Luzerne County violated double
jeopardy - have not been exhausted in state court.

     A state prisoner must exhaust available state remedies
before filing a petition for habeas corpus in federal court. 28
U.S.C. § 2254(b) and (c).  This requirement serves the

interests of comity between the federal and state systems by
allowing the state an initial opportunity to determine and
correct any violations of a prisoner's federal rights.
*O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999)("Comity . . .
dictates that when a prisoner alleges that his continued
confinement for a state court conviction violates federal law,
the state courts should have the first opportunity to review
this claim and provide any necessary relief.").  "The
exhaustion rule also serves the secondary purpose of
facilitating the creation of a complete factual record to aid
the federal courts in their review." *Walker v. Vaughn*, 53 F.3d
609, 614 (3d Cir. 1995).

A habeas corpus petitioner bears the burden of
demonstrating that he has exhausted state remedies. *O'Halloran
v Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).  In order to exhaust
state remedies for federal habeas corpus purposes, a petitioner
must show that he has fairly presented his claim to the state
courts.  *Picard v. Connor*, 404 U.S. 270, 278 (1971).  To be
fairly presented to the state courts both the legal theory and
the facts supporting the claim must have been presented to the
state courts.  *O'Halloran*, *supra,* 835 F.2d at 508.  Further,

14

"state prisoners must give the state courts one full
opportunity to resolve any constitutional issues by invoking
one complete round of the State's established appellate review
process." *O'Sullivan, supra,* 526 U.S. at 845.

In *Rose v. Lundy*, 455 U.S. 509, 522 (1982), the Supreme
Court held that because a total exhaustion rule promotes comity
and does not unreasonably impair the prisoner's right to
relief, a district court must dismiss habeas petitions
containing both unexhausted and exhausted claims.  However, the
habeas statute was amended by the Antiterrorism and Effective
Death Penalty Act of 1996 (AEDPA) by *inter alia* imposing a one-
year statute of limitations on habeas petitions.  The
limitations period is tolled during the time a "properly filed
application for State post-conviction or other collateral
review" is pending, *28 U.S.C.* § 2244(d)(2), but the statute is
not tolled by the filing of a petition for a writ of habeas
corpus in federal court, *Duncan v. Walker,* 533 U.S. 167, 181-
182 (2001).  In *Rhines v. Weber,* 125 S.Ct. 1528, 1533 (2005),
the Supreme Court recognized that "[a]s a result of the
interplay between AEDPA's 1-year statute of limitations and
*Lundy's* dismissal requirement, petitioners who come to federal

15

court with "mixed" petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." "If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review." *Id.*

In *Rhines,* the Court held that district courts have discretion to stay a petition containing both exhausted and unexhausted claims to allow the petitioner to present his unexhausted claims to the state court in the first instance and then to return to federal court for review of his perfected petition. *Id.* However, a court should stay a mixed habeas petition only in limited circumstances. *Id.* "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* "Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id.* "On the other hand, it

16

likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* In such circumstances, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions and the district court should stay the mixed petition.

In cases where a stay is appropriate, a mixed petition should not be stayed indefinitely. *Id.* "Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review." *Id.* "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back." *Id.*

The stay and abeyance procedure is intended to protect a petitioner in appropriate circumstances from having his federal claims become time barred by the one-year limitations period while he completes the exhaustion process. Given the purpose

17

of the stay and abeyance procedure, before we can determine

whether it would be appropriate to stay the petition in this

case or dismiss the petition without prejudice based on a

failure to exhaust we must determine whether a habeas petition

filed by the petitioner after the state courts have considering

his claims that are currently before the Superior Court would

be barred by the statute of limitations.

28 U.S.C. § 2244(d) provides:

> (d)(1) A 1-year period of limitation shall apply
> to an application for a writ of habeas corpus by a
> person in custody pursuant to the judgment of a State
> court.  The limitation period shall run from the
> latest of-
>      (A) the date on which the judgment became final
> by the conclusion of direct review or the expiration
> of the time for seeking such review;
>      (B) the date on which the impediment to filing
> an application created by State action in violation
> of the Constitution or laws of the Untied States is
> removed, if the applicant was prevented from filing
> by such State action;
>      (C) the date on which the constitutional right
> asserted was initially recognized by the Supreme
> Court, if the right has been newly recognized by the
> Supreme Court and made retroactively applicable to
> cases on collateral review; or
>      (D) the date on which the factual predicate of
> the claim or claims presented could have been
> discovered through the exercise of due diligence.
>      (2) The time during which a properly filed
> application for State post-conviction or other
> collateral review with respect to the pertinent
> judgment or claim is pending shall not be counted

18

toward any period of limitation under this
subsection.

In the instant case, there does not appear to be any basis
to find that subsections (B) (C) or (D) of 28 U.S.C.
§ 2244(d)(1) apply.  Accordingly, pursuant to 28 U.S.C.
§ 2244(d)(1)(A) the one-year statute of limitations began to
run on the date that the petitioner's conviction became final.

A state court criminal judgment is final at the conclusion
of review in the United States Supreme Court or when the time
for seeking certiorari review expires. *Kapral v. United States*,
166 F.3d 565, 575 (3d Cir. 1999).  Pursuant to Supreme Court
Rule 13, a petition for a writ of certiorari must be filed
within ninety days after entry of the judgment or order sought
to be reviewed.  In this case, the petitioner did not file a
petition for a writ of certiorari in the United States Supreme
Court.  Thus, the petitioner's conviction became final on
December 17, 1997, ninety days after September 18, 1997 - the
date the Pennsylvania Supreme Court dismissed the petitioner's
direct appeal as improvidently granted.

19

Pursuant to 28 U.S.C. § 2244(d)(2), the statute of limitations is tolled during that time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.  In the instant case, the statute was tolled during the period from September 14, 1998 (the date the petitioner filed his PCRA petition) to January 18, 2005 (the date the Pennsylvania Supreme Court denied the petitioner's request for rehearing).[4]

In summary, the statute of limitations ran from December 17, 1997 to September 14, 1998, a period of 270 days.  The statute was tolled from September 14, 1998 to at least January 18, 2005.  There is a question whether the statute of limitations was also tolled from January 19, 2005 to June 9, 2005 (the date the Pennsylvania Supreme Court directed the Superior Court to consider the remaining issues raised by the

---

[4] We note that the statute of limitations is not tolled during the 90-day period to file a petition for a writ of certiorari to the United States Supreme Court from the denial of a PCRA petition or by the actual filing of a petition for a writ of certiorari from the denial of a PCRA petition. *Stokes v. District Attorney of Philadelphia,* 247 F.3d 539 (3d Cir. 2001); *Miller v. Dragovich*, 311 F.3d 574 (3d Cir. 2002).

petitioner in his PCRA appeal) and thereafter.  That question
turns on whether the petitioner's PCRA petition was pending
from the date the Pennsylvania Supreme Court denied the
petitioner's request for rehearing and the date the
Pennsylvania Supreme Court directed the Superior Court to
consider the petitioner's remaining claims.  The petitioner
points out that the June 9, 2005 Order from the Pennsylvania
Supreme Court was docketed under a docket number different from
the docket number of his PCRA appeal.  Despite the fact that
Pennsylvania Supreme Court's June 9, 2005 Order was docketed
under a docket number different from the docket number of his
PCRA appeal, the petitioner's PCRA appeal is currently pending
in the Superior Court based on the remand from the Pennsylvania
Supreme Court.  Although during the time from January 18, 2005
to June 9, 2005  it may not have been clear that the
petitioner's PCRA petition was still pending, now it is clear
that the petitioner's PCRA petition is still pending.  It is
reasonable to construe the PCRA petition as having been pending
from January 18, 2005 to June 9, 2005 and thereafter.  In sum,
we conclude that the petitioner's PCRA petition was pending
from September 14, 1998 (the date the petitioner filed his PCRA
petition) to the present and only 270 days of the statute of

limitations has run.  The petitioner will have ninety-five days after the state courts finally decide his PCRA petition to file a federal habeas petition.

Because we conclude that a habeas petition filed promptly by the petitioner after the state courts have considering his claims that are currently before the Superior Court would not be barred by the statute of limitations, we conclude that there is no basis to stay the instant petition.  Rather, the petition should be dismissed without prejudice because the petitioner has not exhausted state remedies on all of the claims raised in the petition.  We note that a habeas petition filed after a previous petition was dismissed on exhaustion grounds is not a second or successive petition under 28 U.S.C. § 2244(b).  *See generally Slack v. McDaniel,* 529 U.S. 473, 485-86 (2000).

Because we recommend that the petition be dismissed without prejudice there is no need to address the petitioner's request to amend his petition and it will be recommended that that request be dismissed as moot.  If the petitioner files a habeas petition after the state courts decide his pending

claims, he can include all of his federal claims in that
petition.

     Based on the foregoing, it is recommended that the
petition for a writ of habeas corpus be dismissed without
prejudice based on the petitioner's failure to exhaust state
remedies with regard to all of the claims raised in the
petition.  It is further recommended that the petitioner's
request to stay the case be denied, that the petitioner's
request to amend his petition be denied as moot, and that the
case file be closed.

                                    _____
                                    J. Andrew Smyser
                                    Magistrate Judge
Dated: August   2005.